IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 3, 2006

## STATE OF TENNESSEE v. MICHAEL BAILEY

**Direct Appeal from the Criminal Court for Shelby County**
**No. 03-00824   Joseph B. Dailey, Judge**

_____

**No. W2005-01815-CCA-R3-CD   -   Filed March 13, 2007**

_____

Defendant, Michael Bailey, was indicted on four counts of aggravated robbery. After a jury trial, Defendant was convicted on all four counts. Because the four counts represented four different theories of prosecution for the same criminal episode, the trial court merged the convictions and sentenced Defendant to thirty years as a career offender. After the denial of a motion for new trial, Defendant filed a timely notice of appeal. On appeal, Defendant challenges the sufficiency of the evidence, the trial court's decision to admit evidence during rebuttal of another robbery committed by Defendant, the trial court's refusal to instruct the jury on the lesser included offenses of theft and assault and the trial court's decision to allow the State to impeach Defendant with evidence of his thirteen prior convictions for aggravated robbery. For the following reasons, the judgment of the trial court is reversed and the case is remanded for a new trial.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgment of the Criminal Court Reversed and Remanded**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which DAVID G. HAYES and ROBERT W. WEDEMEYER, JJ., joined.

Robert Wilson Jones, District Public Defender; Phyllis Aluko, Assistant Public Defender; and Trent Hall, Assistant Public Defender, Memphis, Tennessee, for the appellant, Michael Bailey.

Robert E. Cooper, Jr., Attorney General and Reporter; Preston Shipp, Assistant Attorney General; William L. Gibbons, District Attorney General; and Amy Weirich, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

**I. Factual Background**

According to Ruma Banerji Kumar, on June 11, 2002, she was helping her fiancé, a medical student, move out of the medical fraternity house and into an apartment. Ms. Kumar made numerous

trips from the house to her car, loading her fiancé's possessions into her blue 1999 Toyota Camry. At around 5:00 p.m., Ms. Kumar attempted to load a large cooler into the car when Defendant approached her from behind and said, "Excuse me," then said, "Give me your keys, Bitch." Ms. Kumar was "shocked" and immediately blurted, "No." Defendant then lifted his shirt, revealing what Ms. Kumar thought was a silver gun. At that point, Defendant said, "I'm not playing, Bitch, give me the damn keys." Ms. Kumar was "so frightened" that she dropped the keys into Defendant's hands and watched Defendant jump into her car and drive off with clothes, shoes, a new stethoscope, her purse, cellular telephone, credit cards and checkbook. Ms. Kumar testified that she stood there in shock for several minutes before she ran inside the fraternity house to inform someone that she had been robbed. A couple of the people inside the house attempted to catch Defendant. Ms. Kumar called the police, who responded to the scene.

Officer Matthew Miller of the Memphis Police Department was on patrol on June 14, 2002, when he noticed a man sleeping in a 1999 Toyota Camry outside a housing complex. Officer Miller "[r]an the license plate" on the car and learned that the car was stolen. Officer Miller exited his patrol car and woke Defendant up by tapping on the window and announcing his presence. Defendant exited the car, where Officer Miller searched him for weapons, handcuffed him and informed him that he was under arrest. Defendant explained that he was waiting for his brother to come home and let him into an apartment. According to Officer Miller, Defendant did not act surprised when he was informed that the car was stolen. Officer Miller instructed his partner to search the car for weapons when Defendant volunteered, "Well, there's a fake gun in the glove box." Defendant explained that he used the fake gun "in the robbery to get the car." Upon a search of the vehicle, a toy gun was found in the glove box.

Sergeant Joseph Pearlman summoned Ms. Kumar to the police department on June 14, 2002, where she was "immediately" able to identify Defendant from a photographic lineup. Ms. Kumar later retrieved her car from the impound lot, but, with the exception of a few items of clothing and her cellular telephone, none of the items that were stolen remained in the car.

Defendant took the stand in his own defense. According to Defendant, all of the testimony offered by the State was untrue. Defendant claimed that he was not in the car at the time Officer Miller approached him, but that he was coming out of his apartment because there were drugs inside and he did not want to violate his parole. Defendant testified that he did not rob Ms. Kumar.

On cross-examination, Defendant denied making any statements to police officers after he was arrested. In fact, Defendant claimed that he was never apprised of his constitutional rights and denied telling the officers where and how he got the car, what kind of toy gun he used in the robbery, where the gun was located and what property he took from the victim. Despite his insistence that he did not give a statement to the police, Defendant admitted that his signature and initials appeared on the statement prepared by the authorities.

In rebuttal for the State, Kathy Ford testified that she was robbed by Defendant on June 12, 2002. Ms. Ford stated that around 7:00 or 8:00 p.m. that evening, she was walking to her car when

Defendant approached her and asked her where the laundromat was located. Ms. Ford informed Defendant that he had just passed it. Defendant then came closer and told Ms. Ford not to run. At that point, Defendant lifted his shirt and showed Ms. Ford a "shiny gun." Defendant instructed Ms. Ford to "pull your hands back, Bitch, and give me that purse." Ms. Ford gave Defendant her purse. She was later able to identify Defendant from a photographic lineup.

Officer Andrew Hurst testified that he took a statement from Defendant on June 14, 2002, at approximately 6:00 a.m. Officer Hurst stated that he advised Defendant of his constitutional rights and Defendant consented to give a statement. According to the statement, Defendant admitted that when he was arrested for robbing Ms. Kumar, he was in possession of Ms. Ford's stolen credit card. Defendant explained that he got the credit card by robbing Ms. Ford as she approached her car. Defendant informed Officer Hurst that he used a toy gun in the robbery. Defendant also admitted that he was arrested in Ms. Kumar's blue Toyota Camry. Defendant explained that he stole the car after threatening her with the "silver, plastic toy gun" and demanding her keys. Defendant told Officer Hurst that he later sold Ms. Kumar's beeper for five dollars and Ms. Ford's cellular telephone for ten dollars.

Officer Miller took the stand again to testify that when he arrested Defendant, he located Ms. Ford's credit card in Defendant's right front pants pocket.

On surrebuttal, Defendant made a blanket denial as to his involvement in the robberies of Ms. Ford and Ms. Kumar.

## II. Analysis

### A. Prior Bad Acts as Rebuttal Evidence

Defendant contends that the trial court erred by admitting evidence of other bad acts, his robbery of Ms. Ford, during the State's rebuttal proof. Specifically, Defendant argues that Tennessee Rule of Evidence 404(b) prohibits the introduction of the evidence because the crimes were extremely similar in nature and there was a "significant potential for unfair influence." The State counters that the evidence was admissible to show Defendant's identity as the culprit after Defendant denied his involvement in the crime.

Rule 404(b) states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait." In order for such evidence to be admitted, Rule 404(b) requires that the following procedures occur:

(1) The court upon request must hold a hearing outside the jury's presence.

(2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record, the material issue, the ruling, and the reasons for admitting the evidence;

(3) The court must find proof of the other crime, wrong, or act to be clear and convincing; and

(4) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

Tenn. R. Evid. 404(b). Generally, Rule 404(b) is a rule of exclusion. *State v. Jones*, 15 S.W.3d 880, 894 (Tenn. Crim. App. 1999). The rationale underlying Rule 404(b)'s exclusion of evidence of a defendant's prior bad acts is that admission of such evidence carries with it the inherent risk of the jury convicting the defendant of a crime based upon his bad character or propensity to commit a crime, rather than the conviction resting upon the strength of the evidence. *State v. Rickman*, 876 S.W.2d 824, 828 (Tenn. 1994). The risk is greater when the defendant's prior bad acts are similar to the crime for which the defendant is on trial. *Id.; see also State v. McCary*, 922 S.W.2d 511, 514-15 (Tenn. 1996).

Despite the exclusionary nature of the rule:

[e]vidence of a criminal defendant's character may become admissible when it logically tends to prove material issues which fall into one of three categories: (1) the use of 'motive and common scheme or plan' to establish identity; (2) to establish the defendant's intent in committing the offense on trial; and (3) to 'rebut a claim of mistake or accident if asserted as a defense.

*State v. Thacker*, 164 S.W.3d 208, 239-40 (Tenn. 2005) (quoting *State v. McCary*, 922 S.W.2d at 514).

The fact that Defendant was found with Ms. Ford's credit card in his front pants pocket when he was arrested for the aggravated robbery of Ms. Kumar coupled with Defendant's admission to police that he used the same toy gun to commit both crimes constitutes evidence of another crime subject to Rule 404(b) scrutiny. The fact that the prior bad acts evidence is contained within a defendant's statement to the police concerning the offense at trial does not relieve the trial court of the duty to conduct a Rule 404(b) hearing to determine the admissibility of the admissions. *See e.g,. Thacker*, 164 S.W.3d at 238-41 (conducting a Rule 404(b) analysis in light of the defendant's references to other crimes in his statement to the police concerning the current charges). Our standard of review of the trial court's determinations under Rule 404(b) is whether the trial court's ruling was an abuse of discretion only if the trial court substantially complies with the rule's procedural requirements. *State v. Dubose*, 953 S.W.2d 649, 652 (Tenn. 1997). An appellate court should find an abuse of discretion when it appears that the trial court "applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining ." *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999); *see also State v. Shuck*, 953 S.W.2d 662, 669 (Tenn. 1997).

At the pre-trial hearing, the State mentioned that it might try to introduce evidence of Defendant's robbery of Ms. Ford. At that time, the trial court concluded that the evidence of Defendant's robbery of Ms. Ford would be inadmissible to show intent, lack of mistake or motive, unless the defense somehow raised a question regarding an issue to which the robbery of Ms. Ford would be relevant. The court specifically noted that identity of Defendant might become an issue, but the trial court felt that it was too early to rule on the matter without hearing the evidence.

At trial, after Defendant testified and the defense rested, the trial court conducted a jury-out hearing in order to revisit the issue of the admissibility of evidence that Defendant robbed Ms. Ford. After listening to arguments of counsel, the trial court commented:

> I understand [that the State is seeking to put on proof of a similar crime]. And what we're ta[l]king about is proof that was found on him that day that he was arrested that would, in essence, rebut what he's now testified to in his testimony; that he didn't have anything to do with any of that -
>
> . . . .
>
> [A]nd strengthen the issue of the identity that the State is required to prove - and the lack of mistake. All of that comes into play now, I believe because he's claiming that the police lied to him, made it all up. Not only did he not commit this robbery; he wasn't even in the car when they found him. He never touched the car; wasn't in the car. He had nothing to do with the car. And so I think all of these facts now become highly relevant where before they were only marginally relevant.
>
> Now, the fact that not only do they find him in the car, but they find, on him, a credit card taken from the robbery the next day. And do I remember correctly, did he make a statement to the effect that this same gun was used in the robbery the second day - . . . - from which the credit card was obtained?
>
> . . . .
>
> And so that link[s] him - the same gun that he claims he never identified for the police or never directed them to the glove box of the car - that same gun, the police are going to testify, or someone is going to say that he made the statement that that was also the same gun he used in the robbery the second day when the credit card was obtained.
>
> So, all of these facts now, in light of what your client has testified to, become highly probative and highly relevant to the issue of identity and lack of mistake.

The trial court later clarified its ruling by stating the following:

I have determined that the proof of other crimes is relevant and highly probative for three reasons. One is the identity. Second is common scheme or plan. In thinking about that, having heard the proof now from both victims, there are a remarkable number of similarities between the two offenses. First of all, they're only a day apart - very close in time. It's not like we're talking about two offenses that occurred a year or two apart. Both of the victims were females who were alone near cars or in parking lots.

In both instances, the defendant has been positively identified as the person that committed the offense.

In both instances, the defendant used essentially the same language in demanding the purses or the keys - in demanding, "Give me the keys, Bitch," or "Give me the purse, Bitch." In both instances when the victim hesitated, the defendant reacted by raising his sweater or shirt and showing the shiny chrome barrel of what appeared to be a pistol, and then the victims relented and gave up the keys or purse, and he went on about his way.

Virtually identical offenses twenty-four hours apart. So I think, in this instance, common scheme or plan would apply as well as it reads - "The evidence may be considered if it tends to establish that the defendant engaged in a common scheme or plan for the commission of two or more crimes solely related to each other." The proof of one tends to establish the other.

Of course, identity is evidence that may be considered if it tends to establish the defendant's identity in the case on trial, and here the defendant is claiming that he didn't commit this offense; that it'[s] all a big mistake; that people are making this up or totally mistaken; that he had nothing to do with it. So this certainly, I think, if believed and accepted by the jury, could aid them in resolving the issue of identity.

And then the third is the defendant's intent - "Evidence may be considered if it tends to establish that the defendant actually intended to commit the crime with which he is presently charged." To show that his intent was to gain the belongings of the victim through the commission of the robbery, proof that he committed an identical offense or virtually identical offense twenty-four hours later would certainly clarify that issue of intent if there ever were any doubt about it.

So I think all three of those are relevant and are why I have allowed the State to present proof of other crimes, and I'll give a curative instruction to that effect at the conclusion of the proof - of the State's rebuttal proof.

In reviewing the trial court's application of Tennessee Rule of Evidence 404(b), it appears that the trial court substantially complied with the procedural requirements of the rule. The trial

court determined in a jury-out hearing that a material issue existed other than conduct conforming with a character trait and placed the reasons for such on the record. Further, the trial court determined that the prejudicial effect of the evidence was outweighed by its probative value. While the trial court did not explicitly find that the proof of the other crime was clear and convincing, that finding is implicit in the trial court 's explanation for allowing the testimony by Ms. Ford. Thus, we review the trial court's decision for abuse of discretion.

In our view, the trial court abused its discretion in admitting into evidence the proof of the aggravated robbery of Ms. Ford. As stated above, the State sought to introduce evidence of the subsequent robbery to show identity and lack of mistake. The trial court admitted the evidence for these purposes, but later amended its reasoning to admit the evidence for the additional reasons of showing Defendant's common scheme or plan and his intent. Although these are grounds for which other act evidence may be admitted under 404(b), none of these exceptions were present in this case. "[E]vidence that the defendant committed another crime is admissible only if the ground for relevance is actually being contested in the case on trial." *Bunch v. State*, 605 S.W.2d 227, 230 (Tenn. 1980).

Defendant's identity was not a contested issue at trial. Nor did Defendant put his identity at issue by denying his involvement in the crime and denying the fact that he gave a statement to police. The proof showed that prior to trial, Ms. Kumar identified Defendant in a photographic line-up as the man who stole her car. She also provided an in-court identification of Defendant as the perpetrator. Officer Miller offered an in-court identification of Defendant as the man he found asleep in Ms. Kumar's stolen car. Officer Miller testified that after he arrested Defendant for being in possession of the stolen car, Defendant admitted that he robbed Ms. Kumar and used a toy gun to steal her car. Defendant then told Officer Miller that the toy gun he used was in the glove box of the stolen car. Officer Pearlman testified that he presented Ms. Kumar with a photographic line-up and she "immediately" identified Defendant as the man who stole her car. This evidence was sufficient to establish Defendant's identity as the perpetrator of the crime. Where the identity of the accused is established by other evidence, the other act evidence is not necessary to show identity since the identity of the accused is no longer in issue. *Bunch v. State*, 605 S.W.2d at 230 (citing *Warren v. State*, 178 Tenn. 157, 156 S.W.2d 416, 419 (1941)). Noteworthy is the fact that the trial court concluded in its ruling that as to both the Kumar offense and the Ford offense, "the defendant has been positively identified as the person that committed the offense."

In addition, the other act evidence was also improperly admitted for the purpose of showing common scheme or plan. The most common basis for offering evidence under the common scheme or plan exception is to establish the identity of a perpetrator where the identity is at issue. *State v. McCary*, 922 S.W.2d 511, 514 (Tenn. 1996); *State v. Parton*, 694 S.W.2d 299, 303 (Tenn. 1985). As we have concluded, Defendant's identity was not a material issue in the case. Even had Defendant's identity been at issue, in order to introduce other act evidence to show common scheme or plan, "the methods used in committing the offenses must have 'such unusual particularities that reasonable men can conclude that it would not likely be employed by different persons.'" *State v. Shirley*, 6 S.W.3d 243, 248 (Tenn. 1999) (citing *Harris v. State*, 189 Tenn. 635, 644, 227 S.W.2d

8, 11 (Tenn.1950)). "Only when the method used to commit the crimes is so unique as to be like a signature can the inference of identity properly arise." *Shirley*, at 248. In the case herein, Ms. Kumar was robbed in a parking lot in broad daylight. Defendant approached her, demanded her keys, and when she refused, he showed her the toy gun tucked into the waistband of his pants. Ms. Kumar gave him the keys and he drove away, stealing her car. Ms. Ford, on the other hand, was robbed in a parking lot at night. Defendant approached her, instructed her not to run, showed her the toy gun in the waistband of his pants, then ordered her to hand him her purse. Ms. Ford gave Defendant her purse and he fled the scene running on foot. Although there are similarities between the offenses, the similarities are not so substantial or unique that we can conclude they are signature crimes that could not be committed by different persons.

Defendant's intent was also not at issue in the case. Rather, the question was whether Defendant actually robbed Ms. Kumar and stole her car, not whether he intended to do so. *State v. DuBose*, 953 S.W.2d 649, 656 -57 (Tenn. 1997). As such, the trial court improperly admitted the robbery of Ms. Ford on the issue of intent.

Finally, Defendant did not assert accident or mistake as part of his defense. Specifically, Defendant did not claim that he accidentally robbed Ms. Kumar or that he took her car by mistake. To the contrary, he testified that he was not sleeping in the stolen car, had never been inside the car, and did not use a toy gun to gain possession of the car. Defendant's theory was essentially that the robbery was the result of someone else's actions, and he was not involved in any way. As such, there was no assertion of accident or mistake for the State to rebut and this exception did not apply.

Because the other act evidence was not admitted to prove a contested issue in the case, we must conclude that it was propensity evidence improperly admitted under Rule 404(b). Even when our review reveals error, we will not set aside a final judgment unless, in light of the whole record, the "error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process." Tenn. R. App. P. 36(b). Viewing the record as a whole, we cannot conclude that the error was harmless in light of the prejudice to Defendant and the trial court's additional error in admitting Defendant's thirteen prior robbery convictions. Accordingly, we reverse the judgment of the trial court and remand this case for a new trial.

### B. Impeachment by Prior Convictions

Defendant next complains that the trial court improperly allowed the State to impeach his testimony with proof of his prior convictions. Specifically, Defendant complains that the State was permitted to impeach him with his thirteen prior aggravated robbery convictions as well as two other prior felony theft convictions. Defendant contends that the two theft convictions were sufficient to impeach his credibility and that the additional thirteen prior convictions failed to add probative value sufficient enough to outweigh the prejudicial effect. The State contends that the trial court acted within its discretion in permitting the State to use the prior convictions for impeachment purposes.

-8-

Tennessee Rule of Evidence 609 states that the credibility of a witness may be attacked by evidence of prior convictions if certain prerequisites are met. First, the conviction must be punishable by death or imprisonment over one year or must involve a crime of dishonesty or false statement. Tenn. R. Evid. 609(a)(2). Secondly, if the witness to be impeached is a criminal defendant, the State must give notice prior to trial of its intent to use the conviction for impeachment. Tenn. R. Evid. 609(a)(3). Finally, upon request, the court must determine that the probative value of the prior conviction on the issue of credibility outweighs its prejudicial effect on substantive issues. Tenn. R. Evid. 609(a)(3). On appeal the trial court's ruling on the admissibility of such evidence is reviewed under an abuse of discretion standard. *State v. Waller*, 118 S.W.3d 368, 371 (Tenn. 2003).

Thus, Tennessee Rule of Evidence 609(a)(3) grants additional considerations to criminal defendants when it comes to impeachment with prior convictions. The reason for this is obvious. As with Rule 404(b), there is a concern that if a jury knows of a defendant's previous criminal record, the panel might conclude that the defendant has a propensity to commit crimes and convict on this basis rather than on the evidence of the charges before them. This concern is greatly heightened when all or some of the prior convictions are for identical crimes as those for which the defendant is on trial, as in this case. *Waller*, 118 S.W.3d at 373. Therefore, Rule 609(a)(3) serves as a screening mechanism whereby prior convictions are admitted for impeachment when the potential for undue prejudice is outweighed by the probity of the conviction on the question of the defendant's credibility.

Defendant argues that the trial court erred in allowing the State to cross-examine him regarding prior convictions identical to the charge in the case *sub judice*. Although, as noted earlier, the potential for unfair prejudice is greater when impeachment of the accused is sought to be accomplished using prior convictions for offenses which are identical, such impeachment is not barred as a matter of law. *State v. Baker*, 956 S.W.2d 8, 15 (Tenn. Crim. App. 1997). Instead, the trial court must, upon request, conduct a hearing wherein the relevance of the prior convictions to the defendant's credibility is weighed against its potential for unfair prejudice. Tenn. R. Evid. 609(a)(3); *Waller*, 118 S.W.3d at 373.

The case herein presents a "perfect storm" under Rule 609(a)(3). The crime of aggravated robbery is a class B felony, punishable by more than one year in prison. *See* T.C.A.§ 39-13-402; T.C.A.§ 40-35-111. Moreover, the crime is defined as an intentional and knowing theft of property from the person of another by violence or putting the person in fear and, thus, inherently involves dishonesty. Such a prior conviction has considerable probity with respect to Defendant's credibility. On the other hand the prior convictions used to impeach Defendant's credibility are identical to the offense which is the subject of this appeal. There is therefore a heightened potential for unfair prejudice with regard to the jury's deliberation with respect to the substantive issue of Defendant's guilt.

The State sent Defendant's attorney notice of its intent to use prior convictions to impeach Defendant's credibility should he testify. At a pretrial hearing on the matter, Defendant objected to

the use of the prior convictions. The trial court, after consideration, determined that all thirteen prior aggravated robbery convictions were admissible. The court stated that the prior convictions, "although similar in nature to the instant offense," had a large bearing on one's credibility as a witness. The trial court concluded that "the probative value would far outweigh the prejudicial effect . . . in context of credibility."

We disagree with the trial court. In our view, the trial court abused its discretion in allowing the State to impeach Defendant's credibility with his thirteen prior aggravated robbery convictions. The State introduced evidence of two prior felony theft convictions in addition to the thirteen robbery convictions for the purpose of impeaching Defendant's testimony. Given the similarity between the thirteen prior robbery convictions and the present case, the prejudicial impact of these convictions far outweighed their probative value. This is particularly true in light of the fact that two prior felony theft convictions were introduced for an identical purpose. On these facts, we must conclude that Defendant was prejudiced by the introduction of his thirteen prior robbery convictions into evidence, and that the error was not harmless, especially in light of the error in admitting testimony of the aggravated robbery committed against Ms. Ford.

### C. Refusal to Instruct Jury on Theft and Assault

Defendant next argues that the trial court erred by refusing to instruct the jury on the lesser included offenses of theft and assault. Specifically, Defendant argues that because he "chose to contest the evidence against him that was presented at trial" he was entitled to an instruction on all lesser included offenses, including theft and assault. The State contends that the trial court did not err because the evidence did not justify instructions on theft and assault.

Under the test adopted in *State v. Burns*, 6 S.W.3d 453, 466-67 (Tenn. 1999), an offense is a lesser-included offense if:

(a)     all of its statutory elements are included within the charged offense; or

(b)     it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing:

   (1)     a different mental state indicating a lesser kind of culpability; or

   (2)     a less serious harm or risk of harm to the same person, property or public interest; or

(c)     it consists of facilitation, attempt or solicitation of the offense charged.

*Burns*, 6 S.W.3d at 466-67

Both theft and assault are lesser included offenses of aggravated robbery under part (a) of the *Burns* test. *See State v. Henry Hawkins*, No. W2005-00781-CCA-R3-CD, 2006 WL 1703817, at *15 (Tenn. Crim. App., at Jackson, June 21, 2006), *perm. app. denied* (Tenn. Oct. 30, 2006); *State v. Michael P. Healy*, No. W1999-01510-CCA-R3-CD, 2001 WL 721077, at *2 (Tenn. Crim. App., at Jackson, June 26, 2001) (no Tenn. R. App. P. 11 application filed). Our supreme court has previously stated that "[e]vidence sufficient to warrant an instruction on the greater offense also will support an instruction on a lesser offense under part (a) of the *Burns* test. In proving the greater offense the State necessarily has proven the lesser offense because all of the statutory elements of the lesser offense are included in the greater." *State v. Richmond*, 90 S.W.3d 648, 660 (Tenn. 2002) (citing *State v. Allen*, 69 S.W.3d 181, 188 (Tenn. 2002)). Under the reasoning of *Richmond*, Defendant could not have been convicted of aggravated robbery without commission of the underlying crimes of theft and assault. *See Richmond*, at 660. Therefore, the evidence was sufficient for reasonable jurors to convict Defendant of the lesser included offenses of theft and assault. It is the prerogative of the jury to evaluate and weigh the evidence, and determine which offense, lesser or greater, upon which it is going to base its conviction. However, "without the [lesser included offense] instruction being given prior to deliberation, the jury is stripped of its constitutionally mandated power to function as fact-finder." *Richmond*, at 660. As such, the trial court's refusal to instruct the jury regarding the lesser included offenses of theft and assault was error.

If this case was not being reversed and remanded for a new trial as the result of errors in evidentiary rulings, we would likely conclude that the error in failing to charge the lesser included offenses was harmless beyond a reasonable doubt in light of our supreme court's analysis in *State v. Richmond*, 90 S.W.3d 648 (Tenn. 2002). However, *Richmond* also mandates that it is always error to fail to charge *Burns* part (a) lesser included offenses. *See Richmond*, at 660. Consequently, in this case where a new trial must be held, a holding that the trial court's error was harmless beyond a reasonable doubt could be an invitation for the error to occur again. The record reflects that Defendant filed a written request for the trial court to charge the *Burns* part (a) lesser included offenses of theft and assault pursuant to Tennessee Code Annotated section 40-18-110. Upon retrial, if Defendant again requests in writing that the trial court charge these or any other *Burns* part (a) lesser included offenses, the trial court shall do so.

## D. Sufficiency of the Evidence

Finally, Defendant argues that the evidence was insufficient to support his conviction for aggravated robbery. Specifically, Defendant contends that the evidence was insufficient to convict him because he merely employed a toy gun during the commission of the robbery. Further, Defendant argues that the evidence of his identity as the perpetrator was not credible. The State disagrees, arguing that it was not necessary that Defendant use a real gun during the commission of the offense and that Ms. Kumar "clearly and unequivocally" identified Defendant as the perpetrator. Although we must reverse the conviction and remand the case for a new trial, we will address Defendant's challenge that the evidence was insufficient to sustain his convictions. We will do so in the event of further appellate review, and because if this issue is meritorious, the conviction must be reversed and the charge dismissed rather than remanded for a new trial. *Jackson v. Virginia*, 443

U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed.2d 560 (1979); *State v. Hall*, 8 S.W.3d 593, 599 (Tenn. 1999).

In considering this issue, we apply the familiar rule that where sufficiency of the convicting evidence is challenged, the relevant question for the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). This Court does not reweigh or reevaluate the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). A jury verdict, once approved by the trial judge, accredits the state's witnesses and resolves all conflicts in favor of the state. *State v. Bigbee*, 885 S.W.2d 797, 803 (Tenn. 1994). Accordingly, the state is entitled to the strongest legitimate view of the evidence and all legitimate and reasonable inferences which may be drawn therefrom. *Id.* We may not limit the analysis to only the evidence that is determined upon review to be admissible. *State v. Longstreet*, 619 S.W.2d 97, 100-101 (Tenn. 1981); *State v. Alley*, 968 S.W.2d 314, 316 (Tenn. Crim. App. 1997). Rather, the sufficiency of the convicting evidence must be examined in light of all the evidence presented to the jury, including that which is improperly admitted. *Lockhart v. Nelson*, 488 U.S. 33, 41-42, 109 S. Ct. 285, 291, 102 L. Ed. 2d 265 (1988); *State v. Longstreet* 619 S.W.2d at 100-101.

The trier of fact, not this Court, resolves questions concerning the credibility of the witnesses, the weight and value to be given the evidence as well as all factual issues raised by the evidence. *State v. Tuttle*, 914 S.W.2d 926, 932 (Tenn. Crim. App. 1995). In *State v. Grace*, the Tennessee Supreme Court stated, "[a] guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of demonstrating why the evidence is insufficient to support the verdict returned by the trier of fact. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982); *Grace*, 493 S.W.2d at 476.

Robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." T.C.A. § 39-13-401(a). The offense is elevated to aggravated robbery if it is accomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon. T.C.A.§§ 39-13-401(a), -402(a)(1).

The evidence, viewed in a light most favorable to the State, indicated that Defendant stole Ms. Kumar's car after instructing her to "Give me your keys, Bitch," and "I'm not playing, Bitch, give me the damn keys." Then, Defendant lifted his shirt and showed the victim a silver toy gun, which the victim thought was real. Further, Ms. Kumar was able to immediately identify Defendant as the perpetrator in a photographic lineup several days after the incident and later identified Defendant during trial. Moreover, Defendant admitted in his statement to the police that he committed the crime.

Defendant's argument is essentially that Ms. Kumar was not a credible witness because she did not have enough time to observe her assailant. Again, questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *See Pappas*, 754 S.W.2d at 623. There was ample evidence for the jury to determine that Defendant committed aggravated robbery by taking the victim's car and possessions after placing her in fear and displaying an article, a toy gun, that was used and fashioned to lead Ms. Kumar to reasonably believe it to be a deadly weapon. Defendant is not entitled to relief on this issue.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is reversed and remanded for a new trial consistent with this opinion.

_____
THOMAS T. WOODALL, JUDGE